```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
SHAMDUH WILSON,                                                         :
                                                                        :
                          Plaintiff,                                    :      12 Civ. 3021 (JMF)
                                                                        :
             -v-                                                        :      MEMORANDUM OPINION
                                                                        :          AND ORDER
                                                                        :
THE CITY OF NEW YORK, et al.,                                           :
                                                                        :
                          Defendants.                                   :
                                                                        :
------------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/30/2013

JESSE M. FURMAN, United States District Judge:

Plaintiff Shamduh Wilson, a state prisoner proceeding *pro se*, brings this action pursuant to Title 42, United States Code, Section 1983, claiming violations of the First and Fourteenth Amendments as well as the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq*. Defendants — five employees of the New York City Department of Correction (the "DOC") and the City of New York (the "City") itself — move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Third Amended Complaint (the "TAC") for failing to state a claim upon which relief can be granted. For the reasons discussed below, Defendants' motion is GRANTED as to the individual Defendants and GRANTED IN PART and DENIED IN PART as to the City.

## BACKGROUND

The following facts, taken from the TAC (Docket No. 46) are assumed, for purposes of this motion, to be true. *See, e.g.*, *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011).

Plaintiff Shamduh Wilson was housed at the Robert N. Davoren Complex ("RNDC") on Rikers Island in state custody from April 27, 2010 to May 12, 2010. (TAC ¶ 1, Ex. A). Plaintiff

is a practicing Muslim and was, during the relevant time period, enrolled in a program administered by the DOC to serve halal meals — that is, meals in which the meat, if any, has been slaughtered in the manner prescribed by Muslim law. Plaintiff avers that, in order to adhere to his sincerely held religious beliefs, he had to be provided with halal meals. (TAC ¶ 1). According to the TAC, however, the food-handling procedures at the RNDC were inadequate to the task. In particular, Plaintiff alleges that the use of trays to serve both halal and non-halal meals resulted in an unacceptably high risk of cross-contamination and "the accidental consumption of pork or leftover food particles on improperly cleaned trays." (TAC ¶¶ 2-3, 7).

Plaintiff alleges that he spoke to Defendant Coffiel, a corrections officer, on April 28, 2010, about the food distribution method. (TAC ¶ 1). The following day, after observing the use of food trays to serve both halal and non-halal meals, and in accordance with his Islamic faith, Plaintiff "requested a disposable tray to eat from and . . . was told none were available." (TAC ¶ 8). Plaintiff did not eat that particular meal "because of [his] fear of the potential contamination of the tray by either pork or uncleanliness." (TAC ¶ 8). On the same day, Plaintiff filed a grievance complaining of: (1) cross-contamination of non-halal food into halal meals, (2) the need for alternatives to the standard plastic eating trays, and (3) the handling of halal food by non-Muslims. (TAC ¶ 9, Ex. A). Additionally, Plaintiff mailed letters describing his grievances to Defendant Emmanuel Bailey, the RNDC's warden; Defendant James Robinson, the grievance coordinator; Defendant James Perrino, the deputy of programs; and Defendant Dixon Benoni, the head cook. (TAC ¶ 9).

Over the next two weeks, Plaintiff claims that he repeatedly requested meals that comported with his religious beliefs. (TAC ¶ 11). His requests were denied. As a result, between April 28, 2010, and May 12, 2010, Plaintiff refused to eat "on average one meal (either

2

lunch or dinner)" per day either because disposable trays were not available or because he was concerned that halal and non-halal meats had mixed. (TAC ¶ 12). On May 12, 2010, Plaintiff was moved to a correctional facility in upstate New York. At that point, Plaintiff still had not received any response to his grievance or letters. Upon his transfer, Plaintiff "sent a second letter to the . . . warden and grievance coordinator informing them that [he] was back upstate and that they should forward any information or response to [his] grievance to [him] there." (TAC ¶ 12). Plaintiff never received a response. (TAC ¶ 12).

On April 16, 2012, Plaintiff commenced this lawsuit. (Docket No. 1). In his initial Complaint, Plaintiff asserted his complaints against five John Doe Defendants and the City of New York. (Compl. 3-4). Plaintiff also requested injunctive relief and monetary damages in the amount of $10,000,000. (*Id.* at 7). On July 2, 2012, Plaintiff filed an Amended Complaint naming the individual Defendants and the City, and elaborating on the facts alleged in the original Complaint. (Docket No. 9; Am. Compl. 2-3). On August 1, 2012, before any Defendant had responded to the Complaint, Plaintiff filed a Second Amended Complaint without leave from this Court. (Docket No. 14). This Court retroactively granted such leave on August 10, 2012. (Docket No. 15). The Second Amended Complaint elaborated on the facts contained in the prior two Complaints, added detail about how Plaintiff had exhausted his administrative remedies, and requested damages in the increased amount of $400,000,000. (Second Am. Compl. 3-8).

On November 13, 2012, Defendants collectively moved to dismiss the Second Amended Complaint. (Docket No. 36). On November 14, 2012, this Court ordered Plaintiff either to amend his Complaint or respond to the motion to dismiss; the order also stated that this was Plaintiff's only chance to amend in light of the motion to dismiss. (Docket No. 41). However, because the order was not mailed to Plaintiff until a month after it was issued, on January 3,

2013, this Court granted Plaintiff an extension to file his amendment. (Docket No. 44). Plaintiff filed the Third Amended Complaint on January 7, 2013. (Docket No. 46). On January 28, 2013, Defendants filed a motion to dismiss the TAC that was substantially similar to its prior motion to dismiss. (Docket No. 47). By order issued on January 29, 2013, this Court informed Plaintiff that no further amendments to his Complaint would be accepted. (Docket No. 50).

Liberally construed, the TAC alleges that the five individual Defendants and the City violated Plaintiff's rights under the Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and RLUIPA. (TAC ¶¶ 13-18). Additionally, Plaintiff claims that Defendants conspired to deprive him of the equal protection of the laws "by gross negligence, deliberate indifference, and failure to act." (TAC ¶¶ 1-6). Finally, he claims that the City "refuses to ensure the enforcement" of DOC Directives concerning the observance of Islamic dietary laws. (TAC ¶ 18). Plaintiff seeks $400,000,000.00 in punitive damages for his alleged injuries. (TAC 9 ¶ 1).

## STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive such a motion, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A court, however, is "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  Thus, when considering *pro se* submissions, a court must interpret them "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted).  Nevertheless, in order to survive a motion to dismiss, even a *pro se* litigant's complaint must state a plausible claim supported by more than conclusory factual allegations.  *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Harris*, 572 F.3d at 71-72.  Put another way, the "'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'" *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34[1][b], at 12-61 (internal quotation marks omitted)); *see also, e.g.*, *Joyner v. Greiner*, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002) (dismissing action because *pro se* plaintiff "failed to allege facts tending to establish" that defendants violated his constitutional rights).

## DISCUSSION

As an initial matter, Plaintiff's claims against the individual Defendants must be dismissed as he fails to allege that any of them was personally involved in the alleged wrongdoing.  It is well established "that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  More specifically, "where the complaint names a defendant in the caption but contains no allegations how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (internal quotation marks omitted).  In the Section 1983 context, unlike the traditional tort context, it is insufficient to allege that supervisors

generally failed to ensure that their employees complied with the law.  As the Supreme Court has explained, "[i]n a § 1983 suit . . . the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677.

Applying these principles here, Plaintiff's claims against the five individual Defendants must be dismissed.  Conclusory allegations aside, Plaintiff avers only that he complained about the halal food program to Defendant Coffiel orally and to Defendants Benoni, Perrino, Robinson, and Bailey by way of letter.  (TAC ¶¶ 1, 13-16).  But while a plaintiff may adequately plead a supervisor's personal involvement in cases of gross negligence or deliberate indifference, "it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation . . . is insufficient to hold that official liable for the alleged violation."  *Spavone v. Fischer*, No. 10 Civ. 9427 (RJH) (THK), 2012 WL 360289, at *5 (S.D.N.Y. Jan. 31, 2012) (quoting *Greenwaldt v. Coughlin*, No. 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995)).  Plaintiff also alleges that Defendants Bailey and Perrino "failed to ensure that the facility staff" followed a DOC Directive concerning the observance of Islamic dietary laws.  (TAC ¶¶ 13-14).  Such allegations rest on a theory of *respondeat superior*, however, and it is well settled that "*respondeat superior* cannot form the basis for a § 1983 claim."  *Hemmings v. Gorczyk*, 134 F.3d 104, 108, 109 n.4 (2d Cir. 1998).  In short, Plaintiff fails to allege the personal involvement of any of the individual Defendants as required under Section 1983.  Accordingly, the TAC must be and is dismissed as to the individual Defendants.

Plaintiff's First Amendment and RLUIPA claims against the City are a different story.  The City argues that those claims fail because Plaintiff does not adequately allege that his religious beliefs are sincere or that the DOC food-handling procedures posed a "substantial

burden" on his religious exercise.  (Mem. Law Supp. City Defs.' Mot. Dismiss 4-10 (Docket No. 38)).  But given the posture of this case and the obligation to construe Plaintiff's pleadings broadly, these arguments fail.  As to the former, the TAC alleges that Plaintiff is a "practicing Islamic detainee" and explicitly references his "sincerely held Islamic belief."  (TAC ¶ 1).  *Cf. Wilson v. City of New York*, No. 06 Civ. 7777 (LAK) (MHD), 2013 WL 3963451, at *5 (S.D.N.Y. Mar. 15, 2013) (noting that "the Second Circuit has cautioned that an inquiry into religious sincerity is heavily fact-laden" and that it is "usually not susceptible to adjudication" even "on summary judgment"), *report and recommendation adopted by* 2013 WL 3963453 (S.D.N.Y. July 31, 2013).  As to the latter, Plaintiff alleges that, as a result of how the trays for halal and non-halal food were handled, he was deprived of at least one meal per day for fifteen days.  (TAC ¶ 12).  That is adequate to state a claim under the First Amendment and RLUIPA. *Cf. Wilson*, 2013 WL 3963451, at *5-7 (denying *summary judgment* as to similar claims under the First Amendment and RLUIPA).

      The City also argues that the TAC fails to satisfy the requirements for suing a municipality established by *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).  In *Monell*, the Supreme Court held that "[a] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Id.* at 694.  Instead, municipalities are liable under Section 1983 only when a plaintiff can demonstrate that "a government's policy or custom," as opposed to decisions of individual municipal employees, inflicts the injury. *Id.* at 694.  This principle has given rise to a two-prong test.  "First, the plaintiff must prove the existence of a municipal policy or custom that caused his injuries. Second, the plaintiff must establish a causal connection between the policy and the alleged civil

rights violation." *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal quotation marks omitted).

The Court concludes that Plaintiff has alleged facts that would support liability under *Monell*. That is, Plaintiff appears to be challenging two DOC Directives regarding adherence to Islamic dietary laws — which are plainly City policies for purposes of *Monell*. (TAC ¶¶ 2, 13-18). Admittedly, the TAC is not as clear as it could be in this regard, as it seems, at times, to suggest that Plaintiff's injuries were caused by a failure to *adhere* to the DOC Directives, not by the DOC Directives themselves. (*E.g.*, TAC ¶ 18). Compounding matters, Plaintiff appears to quote an outdated version of one Directive, which called for the use of disposable trays. (TAC ¶ 2 (quoting City of New York Department of Corrections, Directive 3254 (1986), *available at* http://www.nyc.gov/html/doc/downloads/pdf/3254.pdf)). The current version of that Directive dates to 2006 and does not call for the use of disposable trays. *See* City of New York Department of Corrections, Directive 3254R-A, at 1 (2006), *available at* http://www.nyc.gov/html/doc/downloads/pdf/3254R-A.pdf. Given these circumstances, and Plaintiff's *pro se* status, it is appropriate to construe the TAC as challenging the DOC Directives themselves. So construed, it satisfies the two requirements of *Monell*.

Although Plaintiff's First Amendment and RLUIPA claims against the City survive, his Equal Protection Clause claims do not as he has not alleged any facts that would support a finding of intentional discrimination. *See Washington v. Davis*, 426 U.S. 229, 248 (1976); *see also Hayden v. Paterson*, 594 F.3d 150, 162-63 (2d Cir. 2010). In addition, Plaintiff is not entitled to punitive damages as a matter of law, both because punitive damages may not be awarded against a municipality under Section 1983, *see, e.g.*, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981), and because the TAC fails to allege that Defendants were

"motivated by evil motive or intent" or displayed "reckless or callous indifference to the federally protected rights of others," *Smith v. Wade*, 461 U.S. 30, 56 (1983).  For that matter, Plaintiff cannot seek compensatory damages, as they are barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), which prohibits a prisoner from seeking compensatory damages in federal court absent a physical injury; or injunctive relief, as he is no longer housed at the RNDC.  *See Washington v. James*, 782 F.2d 1134, 1137 (2d Cir. 1986).  Plaintiff may, however, seek nominal damages, even if he is barred from recovering other damages.  *See, e.g.*, *Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002); *Wilson*, 2013 WL 3963451, at *9.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to the individual Defendants and GRANTED in part and DENIED in part as to the City.  As to the City, Plaintiff's claims under the Equal Protection Clause and his request for punitive damages are dismissed; his claims under the First Amendment and RLUIPA survive and shall be construed to seek nominal damages.

The Clerk of Court is directed to terminate Docket No. 47, to terminate all Defendants other than the City as parties, and to mail a copy of this Memorandum Opinion and Order to Plaintiff.

SO ORDERED.

Dated: August 30, 2013
      New York, New York

_____
JESSE M. FURMAN
United States District Judge